# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Travis Clay Andersen, | Case No. 22-cv-3137 (KMM/DLM) |
| Plaintiff, | |
| v. | **ORDER AND REPORT AND RECOMMENDATION** |
| Carver County Sheriffs Office et al., | |
| Defendants. | |

This matter is before the Court on Defendants Carver County Sheriffs Office, Laura Lynn Zimmerman, Ben Beyer, Adam Minette, Zach Beebe, Colleen Freiberg, Alex Stern, Shane Dobbs, Reed Ashpole, and Jason Kamerud's (collectively, "Carver County Defendants") Motion to Dismiss Plaintiff's Amended Complaint (Docs. 103 (motion), 105 (memorandum) 106 (Yunker declaration and exhibits)) to which Plaintiff Travis Clay Andersen has responded (Docs. 116 (memorandum), 117 (exhibits), 126 (exhibits)) and Defendants have replied (Doc. 121). Additionally, Mr. Andersen has moved the Court for counsel and an oral deposition hearing (Docs. 134, 136), to which Defendants have responded (Docs. 134, 141). The case has been referred to the undersigned magistrate judge for a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 concerning Defendants' motion to dismiss. For the reasons below, the Court denies Mr. Andersen's motion seeking counsel and a deposition hearing and recommends that Defendants' motion to dismiss be granted in part and denied in part.

# BACKGROUND

On December 21, 2022, Defendants removed two state civil actions to federal court that Mr. Andersen had brought under 42 U.S.C. § 1983 and various state laws—the instant case and *Andersen v. Beyer* ("*Beyer*"), 22-cv-3138 (KMM/DLM). At the time of filing, Mr. Andersen was a detainee awaiting sentencing on two felonies and was housed at the Minnesota Correctional Facility designated as Oak Park Heights ("MCF-Oak Park Heights") located in Stillwater, Minnesota. (Docs. 105 at 2; 94 ¶ 126 (alleging that Mr. Andersen was transferred from Carver County Jail to MCF-Oak Park Heights on September 28, 2022.) Since their removal to federal court, the Court has consolidated the two cases (Doc. 69; *Beyer* (Doc. 41)), and Mr. Anderson's operative Amended Complaint incorporates the allegations from both actions (Doc. 94). Plaintiff brings claims against 12 Defendants who he claims violated his rights protected by federal and state law during his time as a pretrial detainee between March through September 2022 at the Carver County Jail located in Chaska, Minnesota. (*Id.* at 1; *see also* Yunker Decl., Ex. 2 at 2 (Plaintiff convicted of two felonies on September 19, 2022).)[1]

---

[1] Plaintiff does not specify in his operative pleading (Doc. 94) whether his allegations are against Defendants in their individual or official capacities. "[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." *Miskovich v. Indep. Sch. Dist. 318*, 226 F. Supp. 2d 990, 1013 (D. Minn. 2002) (quoting *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)); *see also Egerdahl v. Hibbing Comm. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995) ("If a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official capacity claims."). Therefore, the Court understands all claims to be official capacity claims against Defendants here.

Mr. Andersen's operative pleading alleges that he suffered various rights violations, including that: Defendant Laura Zimmerman physically assaulted him in the Carver County Jail, and that her supervisor, Sergeant Zack Beebe, expressly permitted the unwarranted assault; Defendant Ben Beyer, the Carver County Assistant Jail Administrator, repeatedly defamed him, entered false information into jail computer systems, and covered up an assault that broke Mr. Andersen's bones, resulting in Eighth Amendment and due process violations involving excessive disciplinary segregation and inaccurate jail records; Defendants Adam Minette, Laura Zimmerman, and Shane Dobbs accused Plaintiff of rule infractions resulting in illegal confinement and segregation; Defendants Colleen Freiberg, Zack Beebe, and Alex Sterns unjustly subjected him to disciplinary punishment and denied him due process; Defendants Frieberg, Beebe, Sterns, Minette, and Zimmerman unlawfully punished him with segregated housing without any legitimate objective; Defendant Minette refused to release Mr. Andersen from a room, threatened him, and then slammed the door on Mr. Andersen's foot, breaking his toe and violating his Eighth Amendment rights; Defendants Kimberly Grob and Tosha Bell failed to provide adequate medical care for Mr. Andersen's broken toe and also provided false information resulting in substandard medical decisions about his medical care in violation of the Eighth Amendment and state law; Defendant Dobbs engaged in unlawful verbal sexual harassment under the supervision of Defendant Jason Kamerud; Defendant Reed Ashpole knew about Defendant Dobbs's pattern of sexual harassment but took no action to stop it; Defendants Beebe and Sterns gave Mr. Andersen extra privileges solely to benefit their own careers in violation of state and federal law; Defendant Beyer violated state law

and administrative rules on the administration of prison facilities and on prisoner discipline; and Defendant Beyer conspired with prosecuting officials in Mr. Andersen's criminal case to restrict Plaintiff's access to legal materials in violation of the First Amendment.

### PART I: DEFENDANTS' MOTION TO DISMISS

Two of these 12 Defendants—Tosha Bell and Kimberly Grob—answered Mr. Andersen's amended complaint (Doc. 124),[2] while the remaining 10 Carver County Defendants—Reed Ashpole, Zack Beebe, Ben Beyer, the Carver County Sheriffs Office, Shane Dobbs, Colleen Freiberg, Jason Kamerud, Adam Minette, Alex Sterns, and Laura Lynn Zimmerman—filed the instant motion to dismiss the claims against them (Doc. 103). In their memorandum supporting their motion (Doc. 105), Defendants argue Mr. Andersen's claims should be dismissed for two reasons: 1) because they are prohibited by the Prison Litigation Reform Act of 1995 ("PRLA"), 42 U.S.C. § 1997e; and 2) because they fail to state a claim for which the Court can provide relief.

Mr. Andersen filed a response (Doc. 116) in which he makes two arguments about why the Court should deny Defendants' motion: 1) the motion is frivolous and premature because it is based on unproven, disputed facts that will be clarified through discovery and future motions practice; and 2) the motion contains misleading language intended to confuse and create misconceptions about Plaintiff's allegations.

---

[2] The Court therefore makes no findings or recommendation concerning Mr. Andersen's allegations about Defendants Grob or Bell.

The County Defendants filed a reply (Doc. 121) in which they argue that their motion was timely under the Federal Rules of Civil Procedure and the procedural posture of this case; that Mr. Andersen's response to their motion provides no substantive arguments about why his claims should not be dismissed; and that the Court should not consider Plaintiff's exhibits[3] because they are outside of the scope of the pleadings properly considered on a Rule 12 motion under the Federal Rules of Civil Procedure.

## ANALYSIS

Defendants bring their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Motions brought under Rule 12(b)(6) raise a challenge that even if a court takes everything a plaintiff asserts as true, they have still "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When a court considers a Rule 12(b)(6) motion, it construes the allegations in the light most favorable to the non-moving party— the plaintiff—and affords them all reasonable inferences from those allegations. *See, e.g.*, *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009); *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). To withstand a Rule 12(b)(6) motion, a plaintiff's complaint must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles described by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is

---

[3] Defendants object to the exhibits 1–5 and 8–32 (Doc. 117), but the Court understands this objection to extend to exhibits 6–7 (Doc. 126) filed after Defendants' reply memorandum, and originally intended to be part of the exhibits Mr. Andersen filed with his response memorandum.

entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require detailed factual allegations, but [requires] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (cleaned up). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). In reviewing a motion to dismiss, courts generally consider only "materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Glover v. Verizon Wireless*, No. 22-cv-1093 (ADM/DJF), 2024 WL 384866, at *3 (D. Minn. Feb. 1, 2024) (quoting *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011)); *accord Evelyn M. v. Swanson*, No. 23-cv-3478 (ECT/ECW), 2024 WL 2728461, at *1 (D. Minn. May 28, 2024) (citing Fed. R. Civ. P. 12(d); *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017)).

Finally, pro se pleadings are to be construed liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Liberal construction means that the court construes a pro se plaintiff's filings "in a way that permits the [plaintiff's] claim[s] to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004) (applying liberal

6

construction to a pro se complaint). In other words, pro se litigants are not held to the same stringent standards as though they submitted formal pleadings drafted by an attorney. *See Erickson*, 551 U.S. at 94. However, courts will not supply additional facts or create legal theories on behalf of a pro se plaintiff. *See Stone*, 364 F.3d at 914.

## I.   MR. ANDERSEN'S MEMORANDUM PROVIDES NO BASIS TO DENY DEFENDANTS' MOTION TO DISMISS.

As noted above, Mr. Andersen filed a response to Defendants' motion (Doc. 116). Excluding the signature page, Mr. Andersen's response is a single page containing two general arguments on why the Court should deny Defendants' motion. He argues denial is proper because: 1) the motion is frivolous and premature because it is based on unproven, disputed facts that will be clarified through discovery and future motions practice; and 2) the motion contains misleading language intended to confuse and create misconceptions about Plaintiff's allegations.

As to Mr. Andersen's first argument that "the defense has filed a Rule 12 motion too early" (*id.* at 1) because no discovery has yet been completed, Mr. Andersen misapprehends the applicable federal procedural law that governs this action. Federal Rule of Civil Procedure 12 required Defendants to file within 21 days of service either an answer, *see* Fed. R. Civ. P. 12(a)(1)(A)(i), or "[a] motion asserting [one of seven] defenses" in lieu of an answer, *see* Fed. R. Civ. P. 12(b). A motion under Rule 12(b)(6), such as the one Defendants have filed here (except for Defendants Bell and Grob), is one of the permissible motions under Rule 12(b), and is subject to the deadline the rule requires: that it be filed within the 21 days after service. When an amended pleading is filed later in the

case, such as Mr. Andersen's operative Amended Complaint (Doc. 94) here, Federal Rule of Civil Procedure 15 and Local Rule 15.1 of this District govern the time for a response. Rule 15 states that "[u]nless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." Fed. R. Civ. P. 15(a)(3). Here, Defendants filed their Rule 12(b)(6) motion on February 5, 2024, which was 14 days after the Clerk of Court entered Plaintiff's Amended Complaint on the docket at the Court's request. (*See* Docs. 93 (Order), 94 (Amended Complaint), 103 (Defendants' Motion to Dismiss).) This timing is proper. Thus, the Court finds Plaintiff's first argument that the timing of Defendants' Rule 12 motion is improper fails based on the Federal Rules of Civil Procedure.

As to Mr. Andersen's second argument—that Defendants' motion contains misleading language intended to confuse and create misconceptions about Plaintiff's allegations—he points to no portion of Defendants' memorandum where Defendants mislead the Court about what he has alleged in his amended pleading. While the Court will—as it must—construe Mr. Andersen's pleadings liberally, *see Erickson*, 551 U.S. at 94, it cannot fill in the specific gaps in a general argument that Mr. Andersen makes, *see Stone*, 364 F.3d at 914. In short, without more specificity, the Court lacks the information it needs to test whether Mr. Andersen's argument changes the Court's findings or recommendation in any way.[4]

---

[4] As should be evident by the analysis that follows, the Court has considered Defendants' motion not just by comparison to Defendants' memorandum, but also by the allegations

## II.   THE SCOPE OF THE EVIDENCE BEFORE THE COURT IS LIMITED TO THE PLEADINGS AND WHAT IS EMBRACED BY THEM.

"When ruling on a motion to dismiss under Rules 12(b)(6) or 12(c), a district court generally may not consider materials outside the pleadings." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). "It may, however, consider some public records, materials that do not contradict the complaint, or materials that are 'necessarily embraced by the pleadings.'" (*Id.* (quoting *Porous Media*, 186 F.3d at 1079).)

In submitting his exhibits, Mr. Andersen provides the Court with no argument on what he believes the Court should consider part of the pleadings. The Court has reviewed Mr. Andersen's exhibits (Docs. 117, 126) and, while some appear to relate to allegations in Mr. Andersen's complaint, the Court finds that even if it considered the 32 exhibits that Plaintiff labels "Various Paperwork" and "Rand[o]m Documents" embraced by the pleadings, it would not change the Court's findings or recommendation here. (Docs. 117 at 1; 126.)

## III.   ALL OF MR. ANDERSEN'S CLAIMS THAT SEEK DECLARATORY AND INJUNCTIVE RELIEF, AND MOST OF HIS CLAIMS THAT SEEK COMPENSATORY DAMAGES, SHOULD BE DISMISSED.

Mr. Andersen seeks declaratory, injunctive, and compensatory relief in his amended pleadings. (Doc. 94 at 27–29, 32.) The Court will consider each in turn.

---

contained in Mr. Andersen's operative complaint. It is the allegations in the complaint that control, not a defendant's interpretation of those allegations.

**Declaratory and Injunctive Relief**

Mr. Andersen seeks declaratory relief against Defendants Zimmerman, Minette, Ashpole, Freiberg, Beebe, Sterns, and Beyer. (*Id.* at 27–28.) He asks the Court to declare that: Defendants Zimmerman and Minette's conduct constituted assault under Minnesota law; Defendant Ashpole's negligence and failure to stop sexual harassment violated Minnesota law; Defendants Freiberg, Beebe, and Sterns's conduct in holding sham disciplinary hearings constituted a due process violation; and Defendant Beyer's conduct in speaking to prosecutors in Mr. Andersen's criminal case, placing Mr. Andersen in segregation and upholding others' placement of him in segregation, and making false statements, violated Plaintiff's due process, Fourth, and Fourteenth Amendment rights. (*Id.*) He also seeks injunctive relief, asking the Court to order Carver County Jail "to procure all electronic information" they possess about this lawsuit, specifically including "the Carver County Jail sergeant's phone and def. Freiberg's personal phone, [and] any laptops used by the sergeants." (Doc. 94 at 28.)

Defendants argue that declaratory and injunctive relief are unavailable to Plaintiff because he asks the Court to provide declaratory relief to adjudicate past conduct that has no current, continuing effect. Defendants also contend that because Plaintiff is no longer housed at the Carver County Jail, his request for declaratory and injunctive relief is moot.

Although the PLRA presents no bar to a prisoner's claim for declaratory or injunctive relief, *see Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004) ("Congress did not intend section 1997e(e) to bar recovery for all forms of relief."), the Court nevertheless finds that Mr. Andersen is not entitled to the declaratory and injunctive relief he seeks.

10

"[D]eclaratory relief is not available where it seeks to have the Court adjudicate past conduct for which damages are sought." *Johnson v. Mandac*, No. 16-cv-268 (DWF/HB), 2016 WL 8188503, at *4 (D. Minn. Dec. 7, 2016), *R. & R. adopted*, 2017 WL 438734 (D. Minn. Feb. 1, 2017); *accord Kirckof v. Brown*, No. 1–cv–476 (JRT/SRN), 2002 WL 31718394, at *6 (D. Minn. Nov. 27, 2002). Mr. Andersen asks the Court to adjudicate past wrongs by declaration and then award monetary damages, and therefore, the caselaw bars him from seeking declaratory relief on these allegations. Second, because Mr. Andersen is no longer housed at the Carver County Jail, his transfer to a new facility renders his declaratory relief moot because he is no longer subject to the allegedly unlawful conduct by Defendants. *See Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (to determine whether a request for declaratory relief has become moot, courts ask whether the facts alleged show a substantial controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"); *Sturdevant v. Brott*, No. 19-cv-1068 (ECT/ECW), 2020 WL 1445962, at *2 (D. Minn. Mar. 25, 2020) ("The Eighth Circuit has held repeatedly that a prisoner's claims for declaratory and injunctive relief related to confinement conditions are mooted when he is released or transferred to another facility and is no longer subject to the alleged unlawful conditions.") (collecting cases).

Similarly, "a pending claim for injunctive relief becomes moot when the challenged conduct ceases and there is no reasonable expectation that the wrong will be repeated." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1024 (8th Cir. 2012) (quoting *Roubideaux v. N.D. Dep't of Corr. & Rehab.*, 570 F.3d 966, 976 (8th Cir. 2009). "The Eighth Circuit has consistently held that a prisoner's transfer to a different facility in which the alleged

11

unlawful conduct no longer exists renders that prisoner's request for injunctive relief moot." *Akehurst v. Mundt*, No. 1-cv-574 (JRT/RLE), 2002 WL 1729521, at *2 (D. Minn. July 23, 2002) (citing *Martin v. Sargent*, 780 F.2d 1334, 1336 (8th Cir. 1985); *Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1978); *Williams v. Moore*, No. 92-1318, 1992 WL 120398, at *1 (8th Cir. June 5, 1992) (per curiam)).[5]

For all these reasons, the Court finds that Mr. Andersen is not entitled to declaratory or injunctive relief, and recommends that all claims seeking such relief be dismissed.

**Compensatory Relief**

If Mr. Andersen's claims seeking declaratory and injunctive relief should be dismissed, this leaves only his claims seeking compensatory damages. Mr. Andersen seeks compensatory relief in the amount of $1,500,000 against Defendants Zimmerman, Beyer, Freiberg, Beebe, Sterns, Dobbs, Ashpole, Kamerud, Minette,[6] and thus, because these claims are official capacity claims, from the Carver County Sheriffs Office who employed

---

[5] Additionally, the Court observes that Mr. Andersen's claim for injunctive relief does not ask the Court to order that unlawful conduct stop, *see Stover v. Haskins*, No. 14-cv-5079 (CJS), 2014 WL 12829548, at *2 (W.D. Ark. Nov. 25, 2014), *R. & R. adopted*, 2015 WL 5453867 (W.D. Ark. Sept. 17, 2015), *aff'd* (Apr. 1, 2016), but rather, that Defendants be ordered to preserve electronically stored evidence in this lawsuit. This obligation on Defendants exists wholly apart from any relief Plaintiff seeks in his pleadings. *See Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 232 (D. Minn. 2019) ("A party is obligated to preserve evidence once the party knows or should know that the evidence is relevant to future or current litigation."). If a party in a civil lawsuit fails to preserve relevant evidence after it knows or should know that evidence has relevance to litigation, the proper mechanism to challenge this conduct is to bring a motion seeking sanctions for spoliation. *See* Fed. R. Civ. P. 37(e). These matters are more properly addressed in the context of discovery motion practice, if at all.

[6] The Court excludes the $100,000 that Mr. Andersen seeks from Defendants Grob and Bell, who are not part of this motion to dismiss. (Doc. 94 at 29.)

these Defendants. (Doc. 94 at 28–29, 32.) Specifically, Mr. Andersen seeks $75,000 against Defendant Zimmerman for the physical and emotional injuries he sustained from a false report and assault; $250,000 from Defendant Beyer for placing him in segregated housing, generating false computer information, speaking with the prosecutors in Mr. Andersen's criminal case, enforcing jail rules inequitably, hindering Mr. Andersen's ability to review discovery in his criminal case, and for defamatory and abusive verbal statements; $250,000 jointly and severally from Defendants Freiberg, Beebe, and Sterns for their denial of his due process rights by conducting sham hearings that caused Mr. Andersen severe mental and emotion injuries; $225,000 jointly and severally from Defendants Dobbs, Ashpole, Sterns, and Kamerud for Defendant Dobbs's verbal sexual harassment and false reports, Defendant Sterns's threats of solitary confinement if Plaintiff filed more reports about sexual misconduct, and Defendant Ashpole's failure to intervene when he knew about Dobbs's verbal sexual harassment of Mr. Andersen, all of which caused Plaintiff "emotional injury, mental anguish, anxiety, and distress"; $200,000 jointly and severally against Defendants Freiberg, Beebe, Minette, Sterns, and Zimmerman for unjustly assigning him to segregating housing, thereby damaging his physical and mental health; $200,000 from Defendant Minette for the use of excessive force in slamming the door on Mr. Andersen's foot that resulted in a broken toe bone and "caused emotional and mental injury"; and $200,000 jointly and severally against Defendants Beyer, Sterns, and Beebe for the emotional and mental injuries caused by "inadequate ventilation, plumbing, days in a living unit/cell that was fumigated with fecal matter and overall unhealthy conditions that made Plaintiff sick and lethargic . . . [and] depressed." (*Id.*)

13

Defendants argue that compensatory relief is unavailable to Plaintiff because the PLRA requires that he allege physical injuries that are more than de minimis from the alleged unlawful conduct, and here, Mr. Andersen alleges only de minimis physical injuries and emotional injuries.

To file a federal civil claim that can survive a Rule 12(b)(6) motion such as Defendants' motion here, a prisoner or detainee's pleadings must meet the standards required by the PRLA. *See* 42. U.S.C. § 1997e(h) ("the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."); *Kingsley v. Hendrickson*, 576 U.S. 389, 402 (2015) (the PLRA "applies to both pretrial detainees and convicted prisoners"); *Turner v. Watson*, 821 F. App'x 669, 670 (8th Cir. 2020) (per curiam) ("It is the status of the individual at the time of filing suit that determines whether the individual is a 'prisoner' for purposes of § 1997e.") (citing *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005) (per curiam)). The PRLA requires that a prisoner show either a physical injury or the commission of a sexual act to bring a federal civil claim, meaning that a detainee cannot bring claims solely for mental or emotional distress. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner [or detainee] confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).") This requirement generally applies to all claims within a federal civil action. *See, e.g.*, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (the PLRA applies to Eighth

14

Amendment claims); *Royal*, 375 F.3d at 723 (the PLRA applies to First Amendment claims); *Sturdevant*, 2020 WL 1445962, at *3 (the PLRA applies to First and Fourteenth Amendment claims).

The Eighth Circuit has held that for an injury to qualify as a physical injury for purposes of the PLRA, it must be "more than a de minimis physical injury." *McAdoo v. Martin*, 899 F.3d 521, 525 (8th Cir. 2018). There is no set definition for what is a de minimis injury, but as a general rule, it must cause more than a brief period of minor physical symptoms and typically requires medical treatment. *See Brenizer v. County of Sherburne*, No. 21-cv-1301 (DSD/TNL), 2023 WL 7168840, at *7 (D. Minn. Oct. 31, 2023) (finding "weight gain, muscle atrophy, aches and pains, depression, lack of mental focus, anxiety, high blood pressure, acid reflux, hypertension, fatigue, vitamin D deficiency, and high cholesterol" are de minimis and cannot constitute physical injuries under the PLRA); *Wright v. Smith*, No. 4:21-cv-536 (BSM/JTK), 2022 WL 17656445, at *6 (E.D. Ark. Nov. 23, 2022) (same), *R. & R. adopted*, No. 4:21-cv-536 (BSM), 2022 WL 17629798 (E.D. Ark. Dec. 13, 2022). Relevant here, the Eighth Circuit has held that short-term sensations of pain or soreness are de minimis. *See Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006) ("less-than-permanent aggravation of a prior shoulder condition" is de minimis); *Andrews v. Fuoss*, 417 F.3d 813, 816, 818 (8th Cir. 2005) (soreness is de minimis). The Eighth Circuit has also held that placement in segregated housing is not a physical injury. *See Royal*, 375 F.3d at 722–23. Additionally, this District has held that a claim for retaliation also is not a physical injury for purposes of the PLRA. *Glove v. Bostrom*, No. 18-cv-285 (NEB/ECW), 2023 WL 119450, at *2 (D. Minn. Jan. 6, 2023).

15

To show the commission of a sexual act for purposes of the PLRA, the alleged act must meet the definition contained in 18 U.S.C. § 2264, which requires a penetrative sexual act. According to § 2246, such acts may include:

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

18 U.S.C. § 2246(2).

As a threshold matter, the Court finds that Mr. Andersen's claims are subject to the PLRA because he was a prisoner at the time of filing suit. *See Turner*, 821 F. App'x at 670. As a plaintiff subject to the PLRA, the Court also finds that the majority of Plaintiff's claims for which he seeks compensatory damages allege only emotional injuries or only de minimis physical injuries, and no claim alleges the commission of a sexual act under the definition set out in 18 U.S.C. § 2246. Thus, these claims should be dismissed under the PLRA and are listed as follows:

1. Plaintiff's allegations against **Defendant Colleen Freiberg** who he alleges imposed disciplinary segregation on him for rule infractions without due process (Doc. 94 ¶¶ 10, 129, 131), ordered a fabricated rule infraction report (*id.* ¶¶ 19, 129), wrongfully found him guilty of infractions (*id.* ¶ 36), created circumstances where Plaintiff would be sexually harassed (*id.* ¶ 47), and made recordings on her phone

of Mr. Andersen being subjected to abuse (*id.* ¶ 48), none of which he alleges resulted in a physical injury or the commission of a sexual act;

2. Plaintiff's allegations against **Defendant Laura Lynn Zimmerman** who he alleges verbally harassed him (*id.* ¶ 18), fabricated a report of rule infractions (*id.* ¶¶ 20, 37, 128), failed to allow him out for the daily permitted hour while he was housed in a segregation unit (*id.* ¶¶ 32, 128), wrongfully found him guilty of rule infractions (*id.* ¶¶ 36, 128), and used excessive force that amounted to battery[7] against him when she swung her right arm while giving loud orders to direct conduct surrounding the departure of an inmate from the premises and struck Mr. Andersen's right shoulder, causing him to have to stop himself from falling to the ground and resulting in a stinging sensation of soreness in his shoulder (*id.* ¶¶ 13–17, 132), none of which he alleges resulted in a greater than de minimis physical injury or the commission of a sexual act. The Court determines this injury is no more than de minimis because Plaintiff alleges that when Defendant Zimmerman's hand contacted Mr. Andersen's shoulder, it "caused the Plaintiff's body to fall within the door frame and given that Plaintiff's hands were free of any objects the Plaintiff caught himself before going completely horizontal from an upright position." (*Id.* ¶ 15.) He claims that afterward he had a "stinging sensation coming from (Plaintiff's) shoulder which was caused by the assault that had just taken place" (*id.* ¶ 16), but does not allege anything more than this brief soreness followed the physical contact—physical contact which the Court finds does not amount to an unreasonable, excessive use of force under the circumstances, which also means this claim does not amount to a state law battery claim;[8]

3. Plaintiff's allegations against **Defendant Zack Beebe** who he alleges conducted an unreasonable hearing in which he refused to file charges against Defendant Zimmerman or preserve relevant video footage evidence (*id.* ¶¶ 22–24), unfairly punished Mr. Andersen with segregated housing (*id.* ¶¶ 25, 129, 131), gave Plaintiff privileges to help advance his own career (*id.* ¶¶ 64–67, 136), failed to stop another Defendant's verbal abuse of Plaintiff (*id.* ¶ 70), conspired to and made false reports against plaintiff and conducted a sham hearing on them (*id.* ¶¶ 71, 114), oversaw wrongful rule infractions against Mr. Andersen and failed to respond to Plaintiff's grievances (*id.* ¶¶ 93, 129), made defamatory statements[9] about Mr. Andersen (*id.*

---

[7] Mr. Andersen alleges assault, but it is clear from the facts alleged that contact occurred and that battery is the more appropriate tort and theory of recovery here.

[8] *See Johnson v. Morris*, 453 N.W.2d 31, 41 (Minn. 1990) (finding when the facts alleged fail to support an excessive force claim under § 1983, they likewise fail to support a battery claim).

[9] Even if the Court were to consider Plaintiff's claims of defamation apart from the PLRA, his allegations still fail because they are conclusory rather than alleging plausible facts that amount to the elements of such a claim. *See Iqbal*, 556 U.S. at 678; *see also Tholen v.*

¶ 115), and threatened and attempted to provoke Plaintiff (*id.* ¶¶ 116, 118), none of which he alleges resulted in a physical injury or the commission of a sexual act;

4. Plaintiff's allegations against **Defendant Ben Beyer** who he alleges imposed arbitrary punishment by assigning Mr. Andersen to segregated housing (*id.* ¶¶ 30–31), threw Mr. Andersen's food away after assuring him he could keep it (*id.* ¶ 34), arranged for evidence of threats on a wall to be painted over by a painting crew (*id.* ¶ 58), condoned giving Mr. Andersen disproportionate punishment in segregated housing (*id.* ¶ 91), oversaw wrongful rule infractions against Plaintiff and did not respond to Mr. Andersen's grievances or act to stop the subject of those grievances (*id.* ¶¶ 93, 130), threatened Mr. Andersen (*id.* ¶ 97), encouraged other employees to harass Plaintiff by recording him with the jail sergeant's phone (*id.* ¶ 116), and intentionally tried to interfere with Mr. Andersen's access to discovery in his criminal case (*id.* ¶¶ 121–22, 130),[10] none of which he alleges resulted in a physical injury or the commission of a sexual act;[11]

---

*Assist Am., Inc.*, 970 F.3d 979, 983 (8th Cir. 2020) (citing *Weinberger v. Maplewood Rev.*, 668 N.W.2d 667, 673 (Minn. 2003)) (discussing the elements of defamation under Minnesota law).

[10] To the extent that Mr. Andersen seeks to allege that but for Defendant Beyer's actions, the outcome of his trial would have been different such that he would not have been convicted, the Court finds his claim is also barred by *Heck v. Humphrey*. 512 U.S. 477, 487 (1994) ("Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.").

[11] Plaintiff also alleges that Defendant Beyer's actions violated several rules and a state statute. (Doc. 94 ¶ 137.) First, he claims Defendant Beyer violated PN 303.010, which the Court understands to refer to the Minnesota Department of Corrections's ("DOC") Policy Number 303.010 concerning offender discipline. *See* MNDOC, *Policy Manual*, https://perma.cc/DSH4-LM5Q (last visited July 18, 2024). Second, Plaintiff alleges Defendants have violated Minnesota Rule 2911.2850 requiring jails to have discipline plans that explain when sanctions are appropriate, including disciplinary segregation. (Doc. 94 ¶ 137). *See* Minn. Admin. R. 2911.2850, https://perma.cc/98B5-YJN3 (last updated Dec. 20, 2013). However, it is well settled law in the Eighth Circuit that prisoners have no constitutional right to enforce compliance with internal prison rules and regulations, nor does the violation of those rules and regulations constitute a constitutional violation. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997). Third and finally, Plaintiff claims Defendant Beyer's actions violated Minnesota Statute §§ 241.021 and 243.521—which concern licensing requirements for correctional facilities and the authorized use of administrative segregation, respectively. Yet neither of these sections creates a private right of action. *See Becker v. Mayo Found.*, 737 N.W.2d 200, 207 (Minn. 2007) ("A statute does not give rise to a civil cause of action

5. Plaintiff's allegations against **Defendant Alex Sterns** who he alleges made threats against him (*id.* ¶¶ 38, 102, 116), wrongly denied Mr. Andersen's request that video evidence be preserved and refused to give Plaintiff more than one photograph of his foot injury (*id.* ¶¶ 55, 88), gave Plaintiff privileges to help advance his own career (*id.* ¶¶ 64–67, 136), assigned Plaintiff the disproportionate punishment of segregated housing (*id.* ¶¶ 91, 129, 131), and oversaw wrongful rule infractions against Plaintiff and did not respond to Mr. Andersen's grievances or act to stop the subject of those grievances (*id.* ¶¶ 93, 129), none of which he alleges resulted in a physical injury or the commission of a sexual act;

6. Plaintiff's allegations against **Defendant Shane Dobbs** who he alleges verbally sexually harassed him (*id.* ¶¶ 38–39, 47, 133) made a false report against him (*id.* ¶ 49), and gave him wrongful rule infractions that resulted in illegal confinement in segregated housing (*id.* ¶ 128), none of which he alleges resulted in a physical injury or the commission of a sexual act where more than verbal sexual harassment is required to meet the statutory definition of a sexual act;

7. Plaintiff's allegations against **Defendant Reed Ashpole** who he alleges knew about Defendant Dobbs's sexual harassment of Mr. Andersen, creating a reasonable inference that Defendant Ashpole then failed to stop the harassment, (*id.* ¶¶ 41, 134), and who also restricted his access to computer privileges and to performing legal research for his criminal defense (*id.* ¶ 113), none of which he alleges resulted in a physical injury or the commission of a sexual act where more than verbal sexual harassment is required to meet the statutory definition of a sexual act;

8. Plaintiff's allegations against **Defendant Jason Kamerud** who he alleges knew about Defendant Dobbs's sexual harassment of Mr. Andersen, creating a reasonable inference that Defendant Ashpole then failed to stop the harassment (*id.* ¶ 42), which he does not allege resulted in a physical injury or the commission of a sexual act where more than verbal sexual harassment is required to meet the statutory definition of a sexual act; and

9. Plaintiff's allegations against **Defendant Adam Minette** who he alleges made threats against him (*id.* ¶¶ 7, 69, 74, 76–78, 81–82) and gave him sham rule infractions that resulted in illegal placement in segregated housing (*id.* ¶¶ 89–90,

---

unless the language of the statute is explicit or it can be determined by clear implication.") (citing *Larson v. Dunn*, 460 N.W.2d 39, 47 n.4 (Minn. 1990)).

128, 131), neither of which he alleges resulted in a physical injury or the commission of a sexual act.

As to all these allegations above, even viewing the pro se pleadings liberally concerning the alleged conduct of Defendants Freiberg, Zimmerman, Beebe, Beyer, Sterns, Dobbs, Ashpole, Kamerud, and Minette, and drawing all reasonable inferences for the Plaintiff, the Court finds that Mr. Andersen alleges no resulting physical injuries that are greater than de minimis and no commission of a sexual act under the PLRA's definition because of Defendants' actions. These claims against these Defendants are therefore barred under the PLRA and should be dismissed with prejudice. *Accord Glover v. Bostrom*, No. 18-cv-285 (NEB/BRT), 2022 WL 18587749, at *3 (D. Minn. Aug. 17, 2022), *R. & R. adopted sub nom. Glove v. Bostrom*, 2023 WL 119450 (D. Minn. Jan. 6, 2023), *aff'd sub nom. Glover v. Bostrom*, No. 23-1104, 2023 WL 6459284 (8th Cir. Oct. 4, 2023). That said, the Court finds that there are allegations against some Defendants that meet the requirement of allegations of a greater than de minimis physical injury, which the Court turns to next.

## IV. PLAINTIFF PLAUSIBLY ALLEGES SOME CLAIMS AGAINST DEFENDANTS MINETTE AND BEYER.

### Adam Minette

Plaintiff alleges that Defendant Adam Minette used excessive force against him by slamming the door on his foot, causing Mr. Andersen to suffer a broken toe from the contact. (Doc. 94 ¶¶ 72, 78–80.) He argues that the injury to his toe caused a bone fracture that did not appear to heal properly (*id.* ¶¶ 68, 106), and as a result, he claims Defendant

Minette's actions violated the Eighth and Fourteenth Amendments (*id.* ¶¶ 128, 131, 135) and Minnesota law (*id.* ¶ 132). He seeks compensatory damages. (*Id.* at 29.)

Defendants argue that the force used against Mr. Andersen had to be objectively unreasonable, *see Kingsley*, 576 U.S. at 396–97, and that under the circumstances it was reasonable for a corrections officer to restrict Mr. Andersen's movements by closing a door. Defendants also argue that under Minnesota law, Mr. Andersen has not sufficiently alleged that Defendant Minette used excessive force and thus Plaintiff cannot make out an assault or battery claim.[12]

A pretrial detainee's excessive force claims arise under the Fourteenth Amendment's due process clause rather than the Eighth Amendment. *See Crow v. Montgomery*, 403 F.3d 598, 601 (8th Cir. 2005). The Fourteenth Amendment provides that the government shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Mr. Andersen's rights were violated if Defendant Minette subjected him to excessive force that amounts to punishment. *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). The concept of punishment here is informed by whether the actions are for a legitimate nonpunitive governmental objective. *See Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

As to the parallel state-law claim, to plausibly allege assault in Minnesota, a plaintiff must allege suffering "an unlawful threat to do bodily harm to another with present ability

---

[12] Mr. Andersen does not use the word battery in his pleadings, but construing them liberally, Defendants consider such a claim in their motion for both Defendants Minette and Zimmerman, and the Court finds such consideration proper on the facts alleged. *See Stone*, 364 F.3d at 915.

to carry the threat into effect." *Ivers v. Cub Foods*, No. A17-0882, 2018 WL 414371, at *4 (Minn. Ct. App. Jan. 16, 2018) (quoting *Dahlin v. Fraser*, 288 N.W. 851, 852 (1939)). To sufficiently allege battery in Minnesota, a plaintiff must allege "an intentional unpermitted offensive contact with another." *Dittel v. Farmers Ins. Exch.*, No. A15-0970, 2015 WL 9437759, at *3 (Minn. Ct. App. Dec. 28, 2015) (quoting *Paradise v. City of Minneapolis*, 297 N.W.2d 152, 155 (Minn. 1980)). The Supreme Court of Minnesota has held that where there is no § 1983 claim for excessive force, there is no battery claim. *See Johnson*, 453 N.W.2d at 41.

Upon its review of the pleadings, the Court finds Mr. Andersen's allegations of injury—including a broken toe bone—amount to more than a de minimis injury. *See, e.g.*, *Webb v. King*, No. 614-cv-6037 (PKH/BAB), 2017 WL 741150, at *8 (W.D. Ark. Feb. 1, 2017), *R. & R. adopted*, 2017 WL 741011 (W.D. Ark. Feb. 24, 2017) (noting a plaintiff had no broken bones to establish he had, at most, de minimis injuries). Additionally, the Court finds that Mr. Andersen's allegations of Defendant Minette's taunting and purposeful door slamming are unreasonable under the circumstances and amount to punishment. Mr. Andersen alleges Defendant Minette did not let him leave a waiting room space used for prison visits after Plaintiff's visit was finished, taunted him with Defendant Minette's power to keep him in the room or to use combat training violence on him if he did let him leave, and intentionally slammed the door on Mr. Andersen after appearing to be opening it for him. (Doc. 94 ¶¶ 73–80.) Plaintiff's alleged use of an expletive during this exchange does not create a reasonable inference that Defendant Minette's actions were reasonable and nonpunitive. (*Id.* ¶ 77.) Viewing the allegations in the light most favorable

to Mr. Andersen at this early stage in the litigation, they create a reasonable inference that Defendant Minette's actions do not appear aimed at a legitimate nonpunitive governmental objective, such as "safety and security." *See Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004). The Court therefore recommends that Defendants' motion be denied as to this portion of Mr. Andersen's allegations against Defendant Minette, and the Fourteenth Amendment and state law battery and assault claims be allowed to go forward.

### Ben Beyer

Plaintiff alleges that Defendant Beyer conspired with other Defendants to lie about the cause of Plaintiff's broken toe, impacting the treatment plan for Plaintiff such that it created a risk his toe bone might need to be rebroken to be properly reset (*id.* ¶ 99–106). These allegations are closely related to those made against Defendants Bell and Grob, who do not join in the motion to dismiss and whose claims therefore remain live in this lawsuit. (*See id.* ¶¶ 107–09, 139–40.)

Upon review of the pleadings, the Court finds Mr. Andersen's allegations that Defendant Beyer directed jail medical staff to cover up the source of Plaintiff's injury and created pressure related to his subsequent treatment are enough to raise a reasonable inference that Defendant Beyer's conduct was unreasonable under the circumstances. Plaintiff's allegations raise a fair inference that Mr. Beyer's actions were done with intentional disregard for potentially serious medical consequences for Mr. Andersen's bone to heal properly. Furthermore, the allegations relating to this toe injury are intertwined with the allegations about two Defendants who are not the subject of the Carver County Defendants' motion to dismiss—namely, Defendants Bell and Grob. The Court therefore

recommends that Defendants' motion be denied as to this portion of Mr. Andersen's allegations against Defendant Beyer, and the Fourteenth Amendment claim against him be allowed to go forward. *See Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (quoting *Bell*, 441 U.S. at 535) (setting forth the Fourteenth Amendment standard used to evaluate claims about a pretrial detainee's challenge to conditions of confinement that parallel the Eighth Amendment claims for a convicted prisoner). Because the Court finds that Plaintiff has plausibly alleged that two of Defendant Carver County Sheriffs Office's officials acted unreasonably and violated his constitutional rights, the Court next turns to whether Plaintiff has sufficiently alleged claims against the Carver County Sheriffs Office itself.

## V.    PLAINTIFF HAS FAILED TO ADEQUATELY PLEAD A *MONELL* CLAIM AGAINST THE CARVER COUNTY SHERIFFS OFFICE.

Mr. Andersen names the Carver County Sheriffs Office as a defendant in this action, alleging its officials have acted unlawfully and seeking monetary damages. (Doc. 94 at 1.) For a claim against a governmental entity alleging liability for the unlawful acts of its officials, it is not enough to say that these officials violated Plaintiff's rights and so the governmental entity is responsible for their unlawful actions. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is

responsible under § 1983." *Id.* at 694; *accord Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999); *see also Haggins v. Ramsey County*, No. 15-cv-59 (DWF/DMM), 2019 WL 885659, at *3 (D. Minn. Jan. 30, 2019) ("Where a plaintiff asserts that officers acted in their official capacities, the Court construes the complaint as raising a *Monell* claim.") (citing *Slaughter v. Lawrenz*, 2017 WL 4862764, at *5 (D. Minn. Oct. 26, 2017)).

To plausibly allege a § 1983 *Monell* claim, a plaintiff must allege "that a municipal policy or custom was the 'moving force [behind] the constitutional violation.'" *Mettler*, 165 F.3d at 1204 (quoting *Monell*, 436 U.S. at 694; citing *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 400 (1997) (holding that only "deliberate" action by a municipality can meet the "moving force" requirement)). Here, Mr. Andersen does not allege any policy or custom of the Carver County Sheriffs Office that resulted in his injuries, nor does he allege that his injuries occurred because the Carver County Sheriffs Office failed to properly train its employees. Without any allegations that the Carver County Sheriffs Office deliberately acted in a way that resulted in Mr. Andersen's rights being violated, he has not plausibly alleged a claim against this governmental Defendant and the Court recommends that his claims against the Carver County Sheriffs Office be dismissed.

### PART II: PLAINTIFF'S MOTION FOR THE APPOINTMENT OF COUNSEL AND FOR ORAL DEPOSITIONS AND SETTLEMENT DISCUSSIONS

The Court next turns to Mr. Andersen's motion seeking appointment of counsel and for the Court to hold oral depositions via Zoom so that Defendants can "decide a reasonable settlement." (Doc. 133 at 1.) Defendants oppose these requests. (Doc. 134.) For the reasons below, the Court denies Plaintiff's motion.

As to the request for appointment of counsel, for the same reason that the Court denied an earlier motion from Mr. Andersen seeking the appointment of counsel (*see* Order, Doc. 10), it again denies his request without prejudice.

To the extent that Plaintiff's motion concerning depositions should be understood as a request for the Court's permission to depose Defendants or to facilitate their depositions (*see* Docs. 136 (Plaintiff's deposition notice), 141 (Defendants' opposition memorandum)), the Court finds no permission is needed and will not facilitate depositions in a lawsuit before it. As set forth in the Pro Se Civil Guidebook available to pro se litigants in this District, "[y]ou usually do not need the judge's permission to take a deposition." D. Minn., *Pro Se Civil Guidebook*, https://perma.cc/YLQ4-7RV4 (last updated Aug. 2021) (citing Fed. R. Civ. P. 30). Plaintiff should follow the procedures set out by Federal Rule of Civil Procedure 30 to seek depositions from Defendants. To assist him, the Court will order the Clerk of this Court to provide him with a mailed copy of the Pro Se Civil Guidebook, which contains a chapter on conducting discovery.

As to the request concerning Zoom depositions as they relate to settlement, Defendants argue that they "do not believe an immediate settlement conference would be productive." (Doc. 134 at 1; *see also* Doc. 141.) Settling a case is a cooperative task and the Court does not typically conduct settlement conferences when any party does not agree that settlement discussions would be fruitful. Additionally, given the Court's recommendation here that several claims and Defendants be dismissed from this action, the Court agrees that settlement discussions do not appear warranted at this time because the parties will need time to adjust to the scope of the case should the Court's

recommendations be adopted. That said, the parties are free to renew the request for a settlement conference as the case progresses at such time as they agree that a conference would be productive.

## ORDER

Based on all of the files, records, and proceedings above, **IT IS ORDERED** that:

1. Plaintiff Travis Clay Andersen's Motion Requesting the Appointment of Counsel and an Oral Deposition Hearing (Doc. 133) is **DENIED**; and

2. The Clerk of Court shall mail Mr. Andersen a copy of this District's Pro Se Civil Guidebook.

## RECOMMENDATION

Based on all of the files, records, and proceedings above, **IT IS RECOMMENDED** that:

1. The Carver County Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 103) be **GRANTED IN PART** and **DENIED IN PART**;

2. Plaintiff's Motion in Opposition to Defendants' Motion to Dismiss (Doc. 116) be **DENIED**; and

3. All Defendants and claims in Plaintiff Travis Clay Andersen's Amended Complaint (Doc. 94) be **DISMISSED WITH PREJUDICE** except:

   a. Defendant Adam Minette as to Plaintiff's allegations that Defendant Minette acted unreasonably by using excessive force that resulted in Plaintiff's broken toe;

   b. Defendant Ben Beyer as to Plaintiff's allegations that Defendant Beyer acted unreasonably by pressuring medical staff about the treatment of Plaintiff's broken toe which impacted whether the bone would heal properly; and

   c. Defendants Tosha Bell and Kimberly Grob as to all claims against them, as these were not subject to Defendants' motion to dismiss.

27

Date: July 22, 2024                    _s/Douglas L. Micko_
                                       DOUGLAS L. MICKO
                                       United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).